In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-246 CV


____________________



IN RE JIM WHITFIELD AND INVESTMENT CENTERS OF AMERICA, INC.






Original Proceeding






OPINION


 Jim Whitfield and Investment Centers of America, Inc. (ICA) seek mandamus relief
from the trial court's order denying their motion to compel arbitration. Thomas R. Rash,
Sr., Jeff Rash, and TCT Industries, Inc. (collectively "Rash") sued Whitfield and ICA
(collectively "Whitfield") for fraud and negligence in the handling of two investment
accounts. Upon opening the accounts with Whitfield, an investment representative with
ICA, the Rashes signed "Disclosure Agreements"containing arbitration clauses. The
arbitration clause in each agreement provided that "all controversies that may arise
between us . . . shall be determined by arbitration . . . ." Relying on the arbitration
clauses, Whitfield filed a plea in abatement of the suit, or in the alternative, a motion
compelling arbitration. The trial court denied the plea and the motion, and Whitfield filed
this petition for mandamus. 

 When there is no adequate remedy by appeal, mandamus is available as an
extraordinary remedy to correct a clear abuse of discretion or the violation of a legal duty. 
In re J.D. Edwards World Solutions Co., 87 S.W.3d 546, 548 (Tex. 2002)(orig.
proceeding). A trial court abuses its discretion if it errs in determining what the law is or
in applying the law to the facts. In re Bruce Terminix Co., 988 S.W.2d 702 (Tex. 1998)
(orig. proceeding).

 The trial court's order denying Whitfield's motion finds that Whitfield did not prove
the existence of the arbitration agreements, because he did not introduce the agreements
into evidence at the evidentiary hearing. Whitfield's attorney simply stated at the hearing
he was relying on the sworn evidence attached to his verified plea in abatement and motion
to compel arbitration. An authenticated copy of the Disclosure Agreements with the
arbitration provision was attached to the motion to compel arbitration.

 When one party denies the existence of a binding arbitration agreement, the trial
court may decide whether to compel arbitration on the basis of uncontroverted affidavits,
pleadings, discovery, and stipulations. Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269
(Tex. 1992)(orig. proceeding). If a material fact is controverted, the trial court must
conduct an evidentiary hearing. Id. But the existence of the arbitration clauses in the
Disclosure Agreements was not a disputed material fact below. When asked at the May
2003 hearing if the arbitration clauses existed, Rash stated "they exist" and "we . . .
signed [them]." 

 And Rash judicially admitted the existence of the arbitration clauses in the petition
on file with the court. Assertions of fact, not pleaded in the alternative, in the live
pleadings of a party to the suit are formal judicial admissions. Holy Cross Church of God
in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001). Thomas Rash never asserted below
that the arbitration agreements did not exist or that he and Jeff Rash did not sign the
documents bearing their signatures; he admitted they did so. Since the existence of the
arbitration agreement was uncontroverted below, Whitfield was not required to formally
introduce into evidence his sworn plea in abatement and motion to compel arbitration with
attached, authenticated copies of the Disclosure Agreements and his own affidavit. 

 Evidence regarding uncontroverted matters, including the existence of the
arbitration agreements, was before the court in the form of verified pleadings, judicial
admissions, an affidavit, and authenticated documentary evidence. The trial court abused
its discretion in finding that Whitfield did not establish the existence of an arbitration
agreement. Issue one is sustained.

 In issue two, Whitfield contends the trial court erroneously found that no one signed
the Disclosure Agreement for or on behalf of TCT. Implicit in this finding is the
conclusion that TCT is not bound by the arbitration clause. Disputing the trial court's
finding, Whitfield says an agent or representative did sign the agreement on TCT's behalf. 
Whitfield stated in the affidavit attached to the sworn plea in abatement that the Rashes and
"their company, TCT Industries, Inc.," opened the accounts with ICA. The account's
Disclosure Agreement, dated August 16, 2000, does not contain a signature of anyone
expressly signing as an agent or representative of TCT. The signatures on the document
are those of Tommy Rash, Jeff Rash, and Jim Whitfield. 

 The Rashes never claimed below that TCT was not a party to the Disclosure
Agreement or that Tommy Rash was not acting as the representative of TCT when he
signed the agreement. Indeed, the contrary is true. Rash's petition expressly states that
one account "was established by Defendants under the name of TCT Industries, Inc. and
Tommy Rash, acting as president of said corporation" "on or about August 16, 2000." 
The statement is a clear and unequivocal judicial admission and "has conclusive effect and
bars the admitting party from later disputing the admitted fact." Holy Cross Church of
God, 44 S.W.3d at 568. A further admission occurred at the May 2003 hearing, when
Tommy Rash acknowledged he signed the document containing the arbitration agreement,
and Rash indicated he was the representative for TCT. 

 Rash again argues Whitfield should have offered the petition and the plea in
abatement with the attached affidavit and Disclosure Agreements into evidence at the May 
2003 hearing. For the reasons stated in issue one, the parties were not required to offer
their sworn pleadings into evidence. Rash's second amended petition and Whitfield's plea
in abatement/motion to compel arbitration (with attachments) were part of the record, and
Rash's attorney used the pleadings and attachments himself to question witnesses during
the hearing. 

 The general rule of law in such circumstances is that "a corporate officer's acts on
the corporation's behalf are deemed corporate acts." ACS Investors, Inc. v. McLaughlin,
943 S.W.2d 426, 432 (Tex. 1997). A correct application of the law to the facts
necessitates a finding that Rash signed the agreement on behalf of TCT. In finding that
no one signed the agreement on behalf of TCT, the trial court misapplied the law to the
facts. Issue two is sustained.

 The trial court also stated in its order that Whitfield failed to prove the arbitration
agreements were subject to the Federal Arbitration Act. Rash argues there was no
evidence introduced into the record to establish the FAA applied. We have already stated
the arbitration agreement was shown to exist; they apply to the Rashes, TCT, Whitfield,
and ICA; and the agreements were before the trial court. 

 If there is no express agreement to arbitrate under the FAA, a party may establish
the applicability of the FAA by showing the transaction affects or involves interstate
commerce. In re Kellogg Brown & Root, 80 S.W.3d 611, 617 (Tex. App.--Houston [1st
Dist.] 2002, orig. proceeding). The Disclosure Agreements attached to the plea in
abatement recite that ICA is a registered securities broker/dealer, and the testimony in the
record reveals the accounts involved the investment of funds. The sale of securities has
been held to involve interstate commerce. See Eurocapital Group Ltd. v. Goldman Sachs
& Co., 17 S.W.3d 426, 430 (Tex. App.-- Houston [1st Dist.] 2000, no pet.); Thomas
James Assoc., Inc. v. Owens, 1 S.W.3d 315, 319 (Tex. App.--Dallas 1999, no pet.);
Shearson Lehman Bros., Inc. v. Kilgore, 871 S.W.2d 925 (Tex. App.--Corpus Christi
1994, orig. proceeding). The Federal Arbitration Act applies. Issue three is sustained. 

 In his fourth issue, Whitfield contends the trial court abused its discretion when it
found the arbitration agreements unenforceable because of fraud in the inducement "as to
the contract as a whole." In a FAA case, the Texas Supreme Court has held that if the
defense of fraudulent inducement pertains to the execution of the entire contract rather than
the arbitration provision itself, the claim is subject to arbitration. See In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding); see also Kilgore, 871
S.W.2d at 928-29. In finding that fraudulent inducement as to the contract as a whole
made the arbitration clause unenforceable, the trial court incorrectly applied the law to the
facts in this FAA case. 

 The Rashes assert that their fraud in the inducement claim relate to the arbitration
clause. However, the pleadings and evidence do not support that assertion. Rash's
complaint is that Whitfield represented that the placement of investments with him would
yield a better return than Rash's current investments elsewhere. These alleged
representations pertain to an inducement to enter into the contract as a whole; they do not
specifically relate to the arbitration agreements, as they must, if they are to defeat an
arbitration clause. See In re FirstMerit Bank, N.A., 52 S.W.3d at 756. There is no
evidence that Whitfield made any false material representations with regard to the
arbitration clauses. We sustain issue four. 

 Having sustained the issues on the substantive relief requested by Whitfield, we
need not address issue five, which alleges bias of the trial judge. We conditionally grant
the petition for mandamus and direct the trial court to abate the proceedings below pending
arbitration of all claims in accordance with the agreement. The writ will not issue unless
the trial court fails to comply with this opinion. 

 WRIT CONDITIONALLY GRANTED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on June 6, 2003

Opinion Delivered August 28, 2003


Before McKeithen, C.J., Burgess and Gaultney, J.J..